## KRANTZ MFG. CO., Inc., v. METROPOLITAN ELECTRIC MFG. CO.

(Circuit Court of Appeals, Second Circuit. January 8, 1923.)

No. 144.

**Patents ☜328—805,650, claims 1, 2, and 5, for panel board for electric fuses, held valid and infringed.**

The Krantz patent, No. 805,650, claims 1, 2, and 5 for an improved arrangement of electrical plug fuses on a panel board, which resulted in a more compact structure and a saving of materials, and proved of commercial utility, *held* valid and infringed.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in equity for infringement of a patent by the Krantz Manufacturing Company, Inc., against the Metropolitan Electric Manufacturing Company. Decree for plaintiff (282 Fed. 288), and defendant appeals. Affirmed.

C. P. Goepel, of New York City, for appellant.

Drury W. Cooper, Victor S. Beam, Thomas J. Byrne, all of New York City, for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. Appellee sues for infringement of Krantz patent, No. 805,650, issued November 28, 1905. Below the patent was held valid and infringed as to claims 1, 2, and 5. The invention is for a panel board that is arranged with plug fuses and has for its object to improve the construction thereof. Theretofore fuse plug receptacles were connected with the bus bars through means of crossbars protruding from the outside of the bus bars. With the new invention here considered, the protruding crossbars are done away with, and the receptacle for the fuse plugs is placed over the bus bars, thus saving material for crossbars and space on the panel board. The inventor also does away with joints between the bus bars and the crossbars formerly leading to the receptacles. The panel board comprises a plate or base made of insulating material, such as slate or marble, contact or connection pieces for attachment to the outside and incoming electrical circuits, longitudinal conducting bars called by the trade "bus bars" which are in electrical connection with the incoming circuits, a series of contact pieces or connections for the local or distribution circuits, crossbars for making connections between the bus bars and the local contact pieces or connections, fusible links so constructed and arranged between the bus bars and each of the local circuit terminals as to be melted and thereby open the circuit, if an excessive and dangerous electrical current is accidentally brought into the building, and receptacles for pieces, such as the ordinary screw plugs, for completing connection between any of the local circuits and the bus bars.

These elements were old and were commonly employed for many years. In electrical distribution circuits, two kinds are known: First, the two-wire circuit, of which one wire is the positive or outgoing con-

ductor from the generator, and the other the negative or return wire for completing the circuit back to the generator; the other, the three-wire circuit, in which there are two generators supplying the three wires, the neutral wire serving as outgoing conductor for one generator and as return conductor for the other generator, when the loads on the two generators are uneven. When the loads are equal, no current flows through the neutral wire. In the three-wire circuit, the panel board has three bus bars, while in the two-wire circuit it has two bus bars. The panel board is standardized, so that a board was sent out completed as to bus bars, cross-sections, and the like, and a man skilled in the art could make the proper connections with the outside circuit and with the electrical circuits by attaching the necessary wires to the various terminals upon the board.

Screw plugs for making electrical connection between bus bars and lateral contact pieces leading to the local consumption contacts were also standardized as to size and form. There are various forms of safety devices, but the fuse plugs are the ones considered in this patent. The inventor pointed out the desirability and economies of construction, so far as consistent with the purpose for which the panel board is put, and also safety in construction and arrangement. By the improvement in the panel board, the amount of marble or slate in the base board and the amount of copper in the bus bars and cross-connections become less. This invention was in line with the desire or requirement of standardization, and the economy in size adapted the device for use in constricted places and is therefore practical. The essence of the invention lies in the use of a cross-connecting piece electrically straddling one bus bar and in electrical contact with the other, in combination with the fuse plug receptacles that are located directly above the bus bars. The claims held below to have been infringed are as follows:

"1. In a panel board, the combination of bus bars, and crossbars between the bus bars, with fuse plug receptacles mounted upon said bus bars, and each having a branch line contact piece, one of said contact pieces adapted to be electrically connected to the bus bar beneath its receptacle by a fuse plug, and another adapted to be electrically connected to a crossbar by a fuse plug, but insulated from the bus bar beneath its receptacle.

"2. In a panel board, the combination of bus bars and fuse plug receptacles mounted thereon, with a crossbar connected to one of said bus bars and passing into a receptacle on the opposite bus bar."

"5. In a panel board, the combination of bus bars and fuse plug receptacles mounted thereover, with a cross bar connected to one of said bus bars and passing into a receptacle on the opposite bus bar, but out of contact with said bus bar, and a branch line contact piece entering said receptacle from the opposite side thereof and adapted to be put into connection with the crossbar, but insulated from the bus bar."

The inventor did not limit himself to the precise details of construction shown in the drawings or specifications as to the receptacle or panel board, but the construction is referred to as follows: The receptacles are made of porcelain or other insulating material, and inside of each is put a conducting metal screw shell $F$, properly treaded to receive the screw plug $G$ that contains the fuse. By running a short bent

contact piece $D$ from the local circuit terminal to the contact screw, shell $F$, that terminal will be in electrical contact with the screw plug $G$, when the same is inserted in the shell $F$. The receptacle $C$ is mounted directly above the bus bar $B$, the screw shell $F$ is maintained at a considerable distance above the bus bar $B$, and hence, when the screw plug $G$ is in place, it is quite out of contact with the bus bar; hence the circuit is not completed by contact of the screw plug $G$ with the bus bar. To the left of Figure 3, there is shown a contact screw $L$ projecting down from the upper part of the receptacle and engaging with the bus bar immediately beneath it, but insulated from the contact piece $D$ by an air space or opening $d$, so as to be out of direct contact with the latter. By this means the circuit is completed from bus bar $B^1$, up through the contact screw $L$, to the screw plug $G$, through the fuse contained in the latter to the screw shell $F$, thence through the lateral contact piece $D$ to the local circuit terminal at the left. The receptacle $C$ has openings at either side, one for the entrance of the contact piece D, the other for entrance of "a connecting piece $E$," which is in direct contact with the bus bar $L$, and extends laterally therefrom across through an opening in the opposite shell or receptacle $C^1$, where it is fastened firmly in position by a contact screw $L^1$, which holds it in position above, but out of electrical contact with, the second bus bar $B^1$; it being maintained in firm mechanical union therewith (though out of electrical contact) by the screw $L^1$ which projects downward from the right-hand screw shell $F^1$, which latter screw extends to a layer of insulation that overlies the right-hand bus bar $B$. In mechanical and electrical arrangement the right-hand receptacle $C^1$ is similar to the left-hand one, except that the shortness of the contact screw $L^1$, a layer of insulation above the right-hand bus bar $B$, and a slight air space between that insulation and the bus bar, together act to insulate that bus bar from the screw shell $F^1$. A short bent contact piece $D^1$ entering the right-hand shell $C^1$ connects the screw shell $F^1$ with the right-hand local circuit binding post. When a screw plug is inserted in the right-hand shell its end presses against the contact screw $L^1$ and so completes the circuit between the right-hand binding post, through lateral contact piece $D^1$, screw shell $F^1$, contact screw $L^1$ to the connecting piece $E^1$, thence to the left-hand bus bar $B^1$, the contact screw $L$, the screw fuse plug $G$, the left-hand screw shell $F$, the left-hand contact piece $D$, to the left-hand local circuit binding post. It is provided that by a modification and construction the next two pairs of local circuit binding posts on the upper part of the board $D^1$, $D^1$, may be cross-connected to the lower pair $D$, $D$, through a duplicate connecting piece $E^2$, thus adjacent local consumption circuit terminals may be of opposite polarity, so that a series of complete circuits may be connected up on each side of the panel board.

Appellant distinguishes between its two-wire and three-wire devices in considering its claim of noninfringement. It says it may draw a distinction between "on," "upon," and "thereover," as used in the claim, and the word "above," which it uses to describe the position of its fuse receptacle with its bus bar. It claims its two-wire panel is like Johnson's patent, No. 685,613, of the prior art, and its three-wire like

Klein's, No. 636,905, of the prior art. But the Johnson device is a spread-out panel, having none of the advantages of the panel of the patent in suit, and the claims sustained below will not read upon it. Appellant's device is a narrow and economical panel, having the advantages of the Krantz patent. The claims sustained will read upon appellant's as upon the Krantz patent. The Johnson panel, so far as the record goes, was not used, but the appellant's device is in large commercial use.

We are satisfied that Krantz produced a more narrow and economical panel and board, and the new invention saved material and space on the panel board. The Johnson panel is not as economical of material or space. The Krantz patent and device with its two parallel rows of receptacles are arranged, so that the positive and negative wires of each set of contacts are joining and lead out immediately, without the use of excess material from the pair of fuse plugs or receptacles. The prior art shows the bus bars running one way and the rigid cross-bars running at right angles thereto allowing the use of double pole switches in the distribution circuits; that is, contiguous conductors of opposite polarity, and this is to be observed in the Sargent, Bossert, Johnson, and prior Krantz patent, as well as the Klein patent, No. 636,905. Others that have narrower panels with the fuse plug receptacles over the bus bars, but with no crossbars entering the receptacles, such as the Hundhausen patent, No. 654,310, and the Klein patent, No. 29,154, attempt to arrange the circuits in a particular manner. Johnson has crossbars which are shorter than the standard form, and Klein has crossbars which are larger than those of the prior standard panels. In the Johnson patent, the fuse holder and a portion of the crossbar is elevated or raised to a plane above that of the fuse bar. The fuse holder is not on, upon, or over the bus bar in any sense, and is only above the bus bar in the sense that it is in a plane higher than that of the bus bar. The Johnson device has no shortening of the crossbars, as has the Krantz device, or as in appellant's device. The immediate supports for the fuses are in effect crossbars, and Johnson has therefore protruding crossbars differentiated by Krantz, and is not a narrow panel. Johnson introduced additional parts, and did not save parts. The Klein patent shows a panel of the spread-out variety, and introduces additional length to the crossbars by having certain of them start in the opposite direction from that in which other corresponding branch line contact lies, thereby bringing in additional parts and length to the crossbars, all of this to provide a combination double-pole switching and fusing arrangement. The removable fuse holder is part of the crossbar, and Klein has this protruding crossbar, as has Sargent and Bossert. In both the appellant's and appellee's devices, the path of the circuit is direct to the fuse receptacle and contact piece. That the combined switch and fuse holder of Klein is over the bus bar is only incidental, and nothing is gained, but rather a loss is introduced thereby. Neither the Johnson nor Klein device is described by the claims in suit. The appellant's panel is narrow and economical, and is a saving in material and space, as is stated to be the object of the improvement

invented by Krantz, and we think infringes as to claims found infringed below. There is novelty and utility in the invention, and the patent in suit·is held valid and infringed.

Decree affirmed.